UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLAYTON MOORE,

Petitioner,

vs.

9:05-CV-1165

R.K. WOODS,                                              (J. Suddaby)
Superintendent of Upstate Correctional Facility
Respondent.
_____

CLAYTON MOORE, Petitioner *Pro Se*
MICHELLE ELAINE MAEROV, Assistant Attorney General for Respondent

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, challenging a judgment of conviction rendered in the Onondaga County

Court.  On December 23, 2002, petitioner pleaded guilty to Aggravated Criminal

Contempt.   On February 14, 2003, petitioner was sentenced as a persistent felony

offender to an indeterminate term of incarceration of fifteen years to life.

Petitioner appealed his conviction in October 2003.  On April 30, 2004, the

New York State Appellate Division affirmed petitioner's conviction.  *People v.*

*Moore*, 6 A.D.3d 1076, 775 N.Y.S.2d 615 (4th Dep't. 2004).  The New York Court of

Appeals denied leave to appeal on July 14, 2004. *People v. Moore*, 3 N.Y.3d 661, 816 N.E.2d 576 (2004).

In November 2003, while his direct appeal was pending, petitioner filed a *pro se* Motion to Vacate Judgment pursuant to N.Y. CRIM. PROC. LAW § 440.10. In his motion, petitioner claimed that he was denied the effective assistance of counsel, and that the court failed to honor the plea agreement. In December 2003, the Onondaga County Court denied petitioner's motion to vacate. *People v. Moore*, Decision and Order[1], Onondaga County Court (Walsh, J.), Dec. 22, 2003. In March 2004, the Appellate Division, Fourth Department, denied leave to appeal the denial of the motion to vacate the conviction. *People v. Moore*, Order, Appellate Division, Fourth Department (Kehoe, J.), Mar. 9, 2003.

Petitioner raises five[2] grounds in support of his petition:

1. Petitioner's plea was involuntary, and the plea agreement was ambiguous. (Petition, ¶ 12 (A)).

2. Petitioner was denied the effective assistance of counsel. (Petition, ¶ 12 (B)).

3. The trial court erred by determining petitioner's "persistent felon" status using factors that were not decided by a jury. (Petition, ¶ 12 (D & E)).

---

[1]Respondent listed this document in the State Court Records at Exhibit F. Instead of the two page Judge Walsh Order, respondent mistakenly included an affidavit by an Assistant District Attorney. The court was able to obtain the December 22, 2003 order directly from the chambers of Onondaga County Court Judge William D. Walsh.

[2]Petitioner originally raised an additional claim in support of his petition: that he had been denied his right to appeal (Petition, ¶ 12 (A)). In his reply, petitioner **withdrew** that claim and requested that the court proceed with the remaining claims. (Dkt. No. 19, 2).

4.  Petitioner's sentence is harsh and excessive.  (Petition, ¶ 12 (E)).

5.  The trial court erred when it failed to honor petitioner's plea deal. (Petition, ¶ 12 (F)).

Respondent has filed an answer with a memorandum of law (Dkt. No. 14), and the pertinent state court records[3] ("SCR").  For the following reasons, this court will recommend that the petition be denied and dismissed.

## DISCUSSION

**1.   <u>Facts</u>**

Petitioner's plea and conviction in December 2002 for Aggravated Criminal Contempt stems from events earlier that year.  On July 11, 2002, a Syracuse City Court judge issued a partial Order of Protection designed to prevent petitioner from hurting his girlfriend, Stephanie Evans.  (February 14, 2003 Sentencing Hearing ("S."), 13).  The City Court judge who issued the protective order checked a box on the order indicating that petitioner was in the courtroom when the order was issued. *Id*.  The judge explained to petitioner: "[i]t won't prevent you from seeing her. You're not to hit her, harass her, kick her, do whatever else."  *Id*.  The petitioner

---

[3]The State Court Records include eight lettered exhibits, and a bound volume.  The volume includes the transcripts from petitioner's assorted hearings.  Respondent failed to consecutively paginate the volume as required by N.D.N.Y. Local Rule 72.4(d).  Therefore, when referring to any of the transcripts, the court initially will cite to the hearing date followed by the page number.  The court also notes other errors in respondent's compilation of the State Court Records, including the Court of Appeals's Certificate Denying Leave accidentally placed in Exhibit D (petitioner's motion to vacate his conviction), the error in Footnote 1 *supra*, and an extra copy of the District Attorney's opposition of the motion to vacate at Exhibit H (Appellate Division Order denying petitioner's leave application).

stated "I understand."  *Id*.

Less than one month later, on August 7, 2002, Ms. Evans signed an affidavit stating that on August 6, 2002, petitioner "went crazy and punched me in the left side of the face, cutting me, and he punched me in my left side."  (S. 12).  As a result of Ms. Evans's complaint, petitioner was indicted on one count of Aggravated Criminal Contempt and one count of Third Degree Assault on December 18, 2002.  (December 23, 2002 Plea Hearing ("P."), 2; SCR, Ex. E at 1).  Petitioner was offered a plea bargain.  (P. 3).  The plea bargain consisted of an indeterminate term of incarceration for two to four years in exchange for a guilty plea to the aggravated criminal contempt charge.  (P. 6).

At a hearing on December 23, 2002, petitioner's counsel asked the court for two weeks so petitioner could consider the offer, and requested that petitioner be released on his own recognizance.  *Id*.  The court denied defense counsel's request. *Id*.  Defense counsel argued that petitioner had not missed any court hearings, and that he was participating in drug rehabilitation.  (P. 3-4).  County Court Judge Walsh responded, "[h]e also has numerous felony convictions and presents a risk of flight, at least to my way of thinking.  I'm going to set bail in the amount of $5,000 cash or bond."  (P. 4).  Petitioner's counsel immediately responded that petitioner would accept the plea agreement.  *Id*.  Petitioner assured the court that he would appear for sentencing, and agreed that if he pled guilty, he would be sentenced to two to four

years incarceration.  (P. 4).

Judge Walsh then gave petitioner several warnings.  Judge Walsh stated, "[n]ow if you don't come back, then I can sentence you to the maximum." *Id*.  Judge Walsh also stated that the maximum sentence could "include discretionary persistent felony offender, which is 25 to life." (P. 4-5).  Petitioner assured the court, "I'll come back, sir." (P. 5).  Judge Walsh also warned petitioner

> [y]ou can't get in any trouble.  You're going to have to walk the straight and narrow until the time of sentencing, Mr. Moore. . .  I want you to understand when you enter this plea of guilty, I promised you the minimum in this, two to four, and I'll sentence you to that if you keep your word with the Court and you stay out of trouble and you come back.  But if you don't, if you get in any trouble, you're looking at life.  Life.  Now I'll let you out if you want.  You have the opportunity to get in trouble and risk that.

*Id*.  Petitioner responded, "I'll take the two to four, sir." *Id*.

Judge Walsh then asked petitioner a series of questions before allowing petitioner to plead guilty.  Judge Walsh first advised petitioner that petitioner could consult with counsel at each question, and explained the crime of perjury.  (P. 6-7).  Judge Walsh questioned petitioner about petitioner's ability to read, write, and understand the English language, and asked if petitioner had consumed any alcohol or drugs.  (P. 7).  Petitioner responded in the affirmative when Judge Walsh asked petitioner if he was entering the guilty plea "freely and voluntarily and because [he was] guilty." *Id*.  Petitioner stated that no one had threatened or forced him to plead guilty, and that there were no other promises made to petitioner in order that he

5

would plead guilty.  (P. 8).  Petitioner agreed that by his guilty plea, he waived his

right to confront any witnesses.  *Id*.  Petitioner also stated "Yes, sir" when asked if he

was satisfied with his counsel's services.  (P. 9).

> Judge Walsh gave petitioner a further warning:

> You should further know that if you get into any new trouble in the
> future of a felonious nature and you're convicted of it, you must go to
> state prison for a mandatory period of time and you're also exposed to
> sentencing as a discretionary persistent felony offender, do you
> understand that?

(P. 10).  Petitioner answered "Yes, sir."  *Id*.  Judge Walsh asked petitioner if

petitioner understood that as a condition of his plea bargain, he was required to

waive his right to appeal the conviction.  *Id*.  Petitioner stated that he understood.  *Id*.

Judge Walsh asked petitioner if petitioner had any questions about his waiver of the

right to appeal.  *Id*.  Petitioner did not have any questions, and agreed that he would

sign the waiver of appeal at his sentencing.  (P. 11).

Petitioner then admitted that while Ms. Evans had a protective order against

him, petitioner "intentionally caused physical injury" to Ms. Evans.  *Id*.  Judge Walsh

accepted the guilty plea, and allowed petitioner to remain free until the sentencing

date.  (P. 12).  Judge Walsh told petitioner to participate in the preparation of the pre-

sentence report, and stated "***you must not be arrested pending sentence***."  *Id*.  Judge

Walsh further stated

> If you intentionally fail to obey any of these conditions, a hearing will
> be held and if there is no legitimate reason found for that failure, your

6

bail, if any, will be forfeited and a warrant for your arrest will be issued.

*Id*. Judge Walsh also warned petitioner about the consequences of petitioner's failure to appear for sentencing. (P. 12-13). Judge Walsh set the sentencing for February 11, 2003. (P. 13).

Shortly after the December 23, 2002 plea hearing, Judge Walsh received a telephone call in which he was told that petitioner

> had gone across the street to City Court, confronted the victim in this case in front of the elevator and punched her lights out. Hit her so hard she was unconscious before she hit the floor, and then went into arrest, some type of spasm, and was transported to the hospital.

(January 15, 2003 Hearing, 2-3). Judge Walsh scheduled a hearing to determine whether petitioner should be considered a persistent felony offender. *Id*. at 3. The persistent felony offender hearing was originally scheduled for January 17, 2003. *Id*. A hearing did begin on January 17, 2003, but because of a statutory notice provision, the persistent felony offender hearing was postponed until February 14, 2003. (January 17, 2003 Hearing, 3).

At the January 17, 2003 hearing, petitioner requested permission to speak with Judge Walsh. *Id*. Judge Walsh granted permission, and petitioner stated

> Your Honor, I know it was only a matter of minutes when I left this courtroom. I'm not a bad person. I made bad choices. You know, she's here today, now you have a letter from her. We're going to be together. I have a problem, I'm here to admit that I have an anger problem. And I don't think 15 to life requires that. I need some help.

*Id*. Judge Walsh explained to petitioner that if he wished to present any mitigating

7

factors to the court, he could do so at the persistent felony offender hearing. (January 17, 2003 Hearing, 4). Petitioner attempted to explain to the judge that petitioner had misunderstood the warnings: "to my knowledge I thought persistent means you have to go to trial or something like that or anything like that to be persistent." *Id*. at 5. Judge Walsh responded by reading a portion of the transcript from the December 23, 2002 hearing, and adjourning the hearing. *Id*. at 6.

On February 14, 2003, Judge Walsh conducted a hearing to determine petitioner's persistent felony offender status. Petitioner admitted to a 1989 felony conviction for second degree attempted burglary (two to four year sentence), a 1993 felony conviction for fifth degree criminal possession of a controlled substance (one and a half to three year sentence), and 1995 felony convictions for third degree burglary (three to six year sentence) and fourth degree grand larceny (one and a half to three year sentence). (S. 2-5).

Judge Walsh then asked petitioner a series of questions related both to the underlying incident on August 6, 2002 and to the December 23, 2002 incident. Petitioner admitted that he slapped Ms. Evans on August 7, 2002,[4] but denied punching her in the head and torso. (S. 5-6). Petitioner initially claimed that he did not know about the July 2002 protective order prior to October 2002. (S. 7-8). The

---

[4]Judge Walsh asked about an incident on August 7, 2002. Ms. Evans signed the affidavit in the overnight hours early on August 7, 2002, but the incident took place on August 6, 2002. Petitioner did not correct the judge, but appeared to understand to which incident Judge Walsh was referring.

prosecution then provided the court with minutes from the July 2002 proceedings that indicated that petitioner was present in court when the order of protection was issued, and that petitioner stated that he understood the order of protection.  (S. 9-10).

Judge Walsh admitted into evidence a certified copy of the July 2002 order of protection, minutes of the proceeding for the order of protection, and the August 7, 2002 affidavit by Ms. Evans.  (S. 11).  When asked if he knew about two outstanding arrest warrants at the time of his arrest, petitioner admitted that he knew about one of them.  (S. 16-17).  Judge Walsh then asked petitioner about allegations made in a police report regarding some vulgar comments by petitioner at the time of his arrest in August 2002.  (S. 18-19).  Petitioner denied those allegations, and also denied that he told the officer that petitioner had torn up the order of protection.  (S. 17-19).  The judge then received into evidence a five-page sworn police report detailing some vulgar remarks by petitioner.  (S. 20).

Petitioner then admitted that the plea bargain was agreed to at the December 23, 2002 hearing, but denied that he understood Judge Walsh's warnings about getting into trouble to include an ***arrest***.  (S. 21).  Petitioner insisted that he believed only a ***conviction*** would trigger the persistent felony offender hearing.  *Id*.  Petitioner stated,

> And if I would have understood that, I wouldn't have got in any type of trouble, or anything that could possibly facing [sic] life imprisonment I

9

wouldn't have accepted that deal that day.  I'm not saying it's my
lawyer's fault not really explaining it to me, I just didn't fully
understood [sic] it that day.  I'm not saying that it was an excuse of what
was done or justifying.

(S. 23).

Petitioner also denied punching Ms. Evans after the December 23, 2002

hearing.  (S. 27).  The prosecution produced a sworn statement given by Ms. Evans

on December 24, 2002 detailing the December 23, 2002 incident.  (S. 27-28).  She

stated that petitioner "punched me on the left side of my face and on my nose.  I

immediately passed out.  When I woke up I was on a stretcher on [sic] the

ambulance."  (S. 28).  Petitioner's counsel acknowledged that a partial order of

protection prohibiting assaultive behavior was in effect at the time of the December

23, 2002 incident.  (S. 30-31).

The court received into evidence petitioner's rap sheet which included a series

of arrests dating back to petitioner's first arrest at age sixteen.  (S. 31-32).  The court

also received into evidence certified copies of petitioner's 1993 and 1995 felony

convictions.  (S. 36).  Petitioner admitted that he tested positive for cocaine and

Oxycontin while he participated in a rehabilitation program in the fall of 2002.  (S.

34-35).

Petitioner called Ms. Evans to give mitigating testimony in his favor.  (S. 37).

Judge Walsh warned Ms. Evans that if she contradicted any sworn statement that she

had previously made, she could expose herself to criminal perjury charges.  (S. 38).

10

Ms. Evans stated that she wished to consult with an attorney before she testified.  *Id*.

Ms. Evans then testified that she "kind of lied" in her sworn statement.  (S. 40).  Ms.

Evans explained that she and petitioner did drugs together, and that she did not want

her daughter to know about her drug use.  *Id*.  With respect to the July 6, 2002

incident, Ms. Evans stated that "[petitioner] shoved me, I shoved him.  We would do

it back to each other because we were always high."  *Id*.  With respect to the

December 23, 2002 incident, Ms. Evans stated that

> there was shoving, didn't get hit, we shoved each other in the elevator.
> We were arguing.  I was off of my OxyContin, going through
> withdrawals.  And they took me to the hospital and I didn't stay, I
> walked out because I didn't want them to see crack cocaine was in my
> system.  And that's why I had . . . my doctor stopped giving me the
> medicine because I tested positive for cocaine and I was going through
> withdrawals.  That causes seizures and convulsions.  And I knew that is
> what it was from, from not having my medication, because I had one
> earlier, like two days before this.

(S. 41-42).  On cross examination, Ms. Evans was shown a picture of herself taken

shortly after the July 6, 2002 incident.  (S. 43).  Ms. Evans stated that there was "a

little red mark on my face," but that it was not from petitioner.  *Id*.  Ms. Evans

testified that she was coerced to give testimony in front of the grand jury: "the people

that came and got me to testify told me if I didn't I was going to jail."  (S. 44).  Ms.

Evans stated that with respect to the  December 23, 2002 incident, she remembered

only that petitioner shoved her.  (S. 47).

Petitioner testified on his own behalf at the persistent felony offender status

hearing.  (S. 48).  Petitioner stated that he was on drugs during the July and

December 2002 incidents.  (S. 50-51).  Petitioner stated that he and Ms. Evans

shoved each other on December 23, 2002, but that he did not punch her in the face.

(S. 52).  After petitioner finished testifying, Judge Walsh allowed petitioner to make

a lengthy statement.  (S. 54-57).  Petitioner stated that he made some bad decisions,

but was not a bad person, and pleaded with the judge not to impose a life sentence.

*Id*.

Judge Walsh adjudicated petitioner to be a persistent felony offender based on

the testimony and exhibits offered at the hearing.  (S. 57).  Judge Walsh stated that

based on the "history and the character of [petitioner] and the nature and

circumstances of his criminal conduct . . . extended incarceration and life-time

supervision would best serve the public interest."  *Id*.  Judge Walsh found that Ms.

Evans's testimony was "less than credible."  (S. 58).  The judge detailed the exhibits

that he received into evidence, and again referenced the warnings that he gave

petitioner at the time that petitioner pleaded guilty.  (S. 58-60).  Petitioner's counsel

asked the judge to consider imposing a three and one half to seven year sentence

which would have been the maximum allowable sentence for a "predicate" felon

rather than a "persistent" felon.  (S. 62).  Judge Walsh sentenced petitioner as a

persistent felony offender to a term of incarceration of fifteen years to life.  (S. 63).

## 2.   **Exhaustion**

The law is well-settled that prior to bringing a petition for habeas corpus

pursuant to 28 U.S.C. § 2254, a petitioner must exhaust his state court remedies with

respect to each claim presented in his federal application for habeas relief.  *Baldwin*

*v. Reese*, 541 U.S. 27, 29 (2004).  The petitioner must "fairly present" his claims in

each appropriate state court, alerting the court to the ***federal nature*** of the claim.

*Baldwin*, 541 U.S. at 29 (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).

The petitioner must have informed the state court of ***both*** the factual ***and*** legal

premises of the claims that he is attempting to bring in federal court.  *Id*.

As the Second Circuit has held, in order for a petitioner to "invoke one

complete round of the State's established appellate review process," he must first

appeal his conviction to the Appellate Division and then must seek further review of

the conviction by applying for leave to appeal to the New York Court of Appeals.

*Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (quoting *Galdamez v. Keane*, 394

F.3d 68, 74 (2d Cir. 2005)).  Applicants for leave to appeal must submit briefs and

other documents to the Court of Appeals, identifying the issues upon which the

application is based, and must focus upon identifying problems of reviewability and

preservation of error.  *Smith v. Duncan*, 411 F.3d at 345.  The court found that it

would undermine the principles of comity to consider a constitutional claim as to

which no ruling was requested from the state court.  *Grey v. Hoke*, 933 F.2d 117, 120

(2d Cir. 1991).  Respondent concedes that petitioner "fully exhausted" *all*[5] of the claims before this court.

## 3.   Procedural Default

### A.  Claims Raised in Section 440 Motion

In his motion to vacate judgment pursuant to N.Y. CRIM. PROC. LAW § 440.10, petitioner claimed that he was denied the effective assistance of counsel, and that the Onondaga County Court failed to honor the terms of the negotiated plea agreement. Judge Walsh denied petitioner's motion, stating that both claims "are either pending review by the Appellate Division, Fourth Department pursuant to [petitioner's] direct appeal or ***could have been raised on such appeal***."  *People v. Moore*, Decision and Order, Onondaga County Court (Walsh, J.), Dec. 22, 2003.  As neither claim was raised in petitioner's direct appeal to the Appellate Division, it is clear that Judge Walsh found that both claims were improperly raised in petitioner's Section 440 motion and should have been raised in the direct appeal.[6]  The result is that because the claims were improperly raised in the motion to vacate, and not raised at all in petitioner's direct appeal, both claims are procedurally defaulted.

---

[5]In fact, respondent concedes that petitioner exhausted "***all but one*** of the claims in the petition."  (Dkt. No. 14, *Memo*, 10) (emphasis added).  The claim that respondent argued was unexhausted is the denial of the right to appeal claim that the court allowed petitioner to withdraw.  Respondent, therefore, concedes that petitioner's remaining claims are exhausted.

[6]The court notes that because petitioner claimed that he was denied the effective assistance of counsel, and because Judge Walsh stated that the claims could have been raised on direct appeal, Judge Walsh must have been referring to an ineffective assistance of counsel claim based on facts contained in the record pursuant to N.Y. CRIM. PROC. LAW § 440.10(2)(b).

### 1. Ineffective Assistance of Counsel

In his motion to vacate judgment, petitioner made a variety of claims about why his counsel was ineffective.  Petitioner stated that his counsel

> allowed him to plead guilty to a plea deal that is ambiguous and not explicit as to what was required of the defendant upon release and trial counsel failed to advise the defendant, or explain to the defendant the consequences of his plea.  Or to request of the court to be more specific so that the plea deal do not have two or three meaning.  Defense counsel also . . . failed to object to the court giving the defendant an enhanced sentence without the court holding an Outley Hearing, and conducting an in depth inquiry into whether or not the defendant actually committed upon his release in violation of the plea agreement [sic].

(SCR, Ex. G at 8-9).

Under N.Y. CRIM. PROC. LAW § 440.10, only "improper and prejudicial conduct **not appearing in the record**" may serve as a basis for granting a motion to vacate judgment.  N.Y. CRIM. PROC. LAW § 440.10(1)(f).  Section 440 requires that a motion to vacate **must be denied** when "the judgment is, at the time of the motion, appealable or pending on appeal, and **sufficient facts appear on the record** with respect to the ground or issue raised upon the motion to permit adequate review . . ." N.Y. CRIM. PROC. LAW § 440.10(2)(b) (emphasis added).

Judge Walsh's language is consistent with the statutory requirement in N.Y. CRIM. PROC. LAW § 440.10(2)(b), and appears to rely on the subsection in denying petitioner's motion.  Judge Walsh's ruling that all of these claims about petitioner's representation could have been raised on direct appeal indicates a finding that the

claims were based on conduct that appeared in the record. Judge Walsh's decision was issued in December 2003, but the Appellate Division did not decide petitioner's appeal until April 2004. Once advised that his claims should be raised on direct appeal, there is nothing in the record to indicate that petitioner attempted to add his ineffective assistance of counsel claim to his then-pending appeal.

In his federal petition, petitioner listed bases for his ineffective assistance of counsel claim that all relate to his counsel's failure to object or failure to attempt to withdraw the guilty plea.[7] (Petition, ¶ 12 (B)). All of the grounds contained in the petition are based on conduct that appeared in the record. Therefore, to the extent that petitioner's ineffective assistance of counsel claim in this court is based on conduct that appeared in the record, and is consistent with petitioner's claims in his motion to vacate judgment, the claim is procedurally defaulted because petitioner did not raise the claim in his direct appeal to the Appellate Division.

The court notes that in his reply brief, petitioner cites an Appellate Division case from the Third Department for the proposition that where the ineffective assistance of counsel claim is based on "an alleged failure to provide proper advice concerning sentence exposure," the claim is properly raised on a N.Y. CRIM. PROC.

---

[7]The court must draw a distinction between the two separate grounds for petitioner's ineffective assistance of counsel claim. One ground is that counsel failed to object to the "ambiguous" plea deal, and is consistent with petitioner's claim in his Section 440 motion. However, the second ground contained in the petition is that counsel was ineffective because of a failure to move to withdraw the plea. This second ground will be discussed below.

LAW § 440.10 motion because it is "typically not demonstrable on the main record."

*People v. Reynolds*, 309 A.D.2d 976, 976 (3d Dep't, 2003).  Though petitioner did

not make the claim in his federal petition, to the extent that petitioner is now trying

to allege an ineffective assistance of counsel claim based upon counsel's failure to

give proper advice related to sentencing, or based upon the argument that Judge

Walsh was incorrect when he found that the claim was improperly before him, the

claim is still procedurally defaulted.  Petitioner raised the claim in his Section 440

motion, and Judge Walsh found that the claims raised in the Section 440 motion were

procedurally defaulted.  Petitioner appealed the denial to the Appellate Division, and

the Appellate Division affirmed.  Petitioner did not raise the claim in his direct

appeal, or attempt to amend his direct appeal to include the claim.

### 2.  Failure to Honor the Plea Agreement

It is unclear on what constitutional basis petitioner rests his claim that

Onondaga County Court failed to honor the plea agreement that resulted in

petitioner's December 23, 2002 plea.  All of Judge Walsh's actions related to the

plea agreement and the ultimate decision finding that petitioner was a persistent felon

took place explicitly on the record.  Judge Walsh found that the claim that the court

failed to honor the plea agreement should have been raised on direct appeal.  The

Appellate Division affirmed.  To the extent that this claim could possibly be

construed as an alleged constitutional violation properly raised in this habeas

proceeding, the claim is procedurally defaulted.

### B.  Adequate and Independent State Procedural Ground

It is well settled that federal courts will not consider federal claims decided in state court "if [the state court] judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).  Under *Harris v. Reed*, "a federal claimant's procedural default precludes federal habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. at 262.  In this case, it is clear that the *only* state court to render a judgment with respect to these two claims based the judgment entirely on the state procedural default described in N.Y. CRIM. PROC. LAW § 440.10(2)(b).

"New York Criminal Procedure Law Section 44.10(2)(b) has been recognized as an 'independent and adequate' State procedural ground by courts in this Circuit." *Johnson v. Ricks*, 9:02-CV-1366 (NPM), 2007 U.S. Dist. LEXIS 79935, *43-44 (N.D.N.Y. Oct. 29, 2007) (McCurn, J.) (quoting *Brown v. New York State*, 374 F.Supp.2d 314, 318-19 (W.D.N.Y. 2005)).  See also, *Carvajal v. Artus*, 07 Civ. 10634, U.S. Dist. LEXIS 80241, *151-53 (S.D.N.Y. Oct. 10, 2008) (Peck, M.J.), *adopted*, 2009 U.S. Dist. LEXIS 1335 (S.D.N.Y. Jan. 9, 2009); *Bell v. Poole*, 00CV5214, 2003 U.S. Dist. LEXIS 8231 at *8 n.4 (E.D.N.Y. Apr. 10, 2003).  The

state law basis for Judge Walsh's denial of the motion to vacate was, therefore, independent of the federal claims and an adequate basis for his decision.

### C. Cause and Prejudice

A state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim *only* if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can establish that failure of the court to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991). When petitioner is not able to show cause for the procedural default, the court need not decide the issue of prejudice, because in order to qualify for habeas review under this exception, petitioner must demonstrate **both** cause and prejudice. *Long v. Lord*, 03-CV-461, 2006 U.S. Dist. LEXIS 50439, *17-18 (N.D.N.Y. March 21, 2006) (citing *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985)).

Thus, this court must proceed to an analysis of whether petitioner has shown cause and prejudice for the default on both of these claims. Petitioner does not acknowledge the default on either claim except to say that respondent's arguments that the claims are procedurally defaulted are "unreasonable," "erroneous," and "incorrect." (Dkt. No. 19, 6). Petitioner may be arguing that Onondaga County Court was incorrect in finding that the claims were procedurally defaulted. In any event, the default on these claims consists of petitioner's failure to raise the claims in

his direct appeal.  Petitioner was told that he was using an improper vehicle to raise his claims, at a time when he could have remedied the default.  Though petitioner's direct appeal was pending in December 2003 when Judge Walsh denied the motion to vacate, several months elapsed before petitioner's direct appeal was decided in April 2004.  The court notes that the record does not reflect any effort by petitioner to correct the default by attempting to raise the claims in the Appellate Division. Because petitioner has not shown cause for the default, it is not necessary for this court to decide whether or not petitioner was prejudiced by the default.

Absent cause and prejudice, the court may also excuse a procedural default if petitioner can show that the failure to review his claims would result in a fundamental miscarriage of justice in that petitioner was "actually innocent."  *Sawyer v. Whitely*, 505 U.S. 333, 339 (1992), *see also Murray*, 477 U.S. at 496.  To invoke this exception, the petitioner must show "factual innocence," not mere "legal insufficiency," and must present ***new and reliable evidence*** to show that it is "more likely than not" that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Moore v. Greiner*, 02 Civ. 6122, 2005 U.S. Dist. LEXIS 24184, *35-37 (S.D.N.Y. Oct. 19, 2005) (citations omitted).

In this case, petitioner has presented no new or reliable evidence.  In fact, petitioner has not presented ***any new evidence*** regarding the issue of innocence. Petitioner argues that he submitted new and reliable evidence when his girlfriend

testified on his behalf at the February 14, 2003 Persistent Felon Hearing.  (Dkt. No. 19, 9-10).  Petitioner argues that this testimony exonerated him of the incident after his December 23, 2002 plea hearing.  *Id*.

Petitioner misunderstands what may constitute new and reliable evidence.  The testimonial evidence that petitioner wants this court to consider is not ***new***, and was, in fact, considered by Judge Walsh and mentioned in his oral decision.  Furthermore, evidence showing innocence would have to be related to the ***original*** charges stemming from the August 2002 incident.[8]  Evidence of petitioner's innocence of the December 2002 incident simply is not relevant to the court's analysis of whether it may consider the procedurally defaulted claims.

Thus, petitioner's claims that he was denied the effective assistance of counsel because of counsel's failure to object to the "ambiguous" deal or failure to properly advise plaintiff, and that the court failed to uphold its part of petitioner's plea bargain may be dismissed.  (Claims 2 and 5).  The court finds that petitioner has not shown cause and prejudice for his failure to bring his claims of ineffective assistance of counsel and the court's failure to uphold the plea bargain, and that failure to review this claim will not result in a fundamental miscarriage of justice.  As the Onondaga

---

[8]Though petitioner only mentions the December 2002 incident in his traverse, the court notes that petitioner's girlfriend's testimony included her denial that petitioner hit her on either occasion–in August or December 2002.  However, not only is this evidence not ***new***, but Judge Walsh found the testimonial evidence not to be credible.  In any event, this court cannot determine the reliability of Ms. Evans's testimony.

County Court explicitly relied on the procedural defaults to deny petitioner's motion to vacate, and petitioner has not shown cause and prejudice, this court finds that consideration of the merits of both of these claims is barred.

### D.  Unpreserved Claims

In his direct appeal, petitioner argued that his plea was involuntary because he had been coerced into pleading guilty by the court.  (SCR, Ex. A, 9-13; Claim 1). Petitioner also argued that in making the persistent felon determination, the court had improperly relied on certain factors that should have been determined by a jury. (SCR, Ex. A, 20-23; Claim 3).  The Appellate Division found that both of these claims were not preserved for the Appellate Division's review.  *People v. Moore*, 6 A.D.3d at 1077.  With respect to petitioner's claim that his plea was not made knowingly, voluntarily, and intelligently, the Fourth Department found that "defendant failed to move to withdraw the plea or to vacate the judgment of conviction [on the basis of an involuntary plea] and thus has failed to preserve that contention for our review."  *Id*.  The Fourth Department also stated that "[i]n any event, [petitioner's] claim is without merit."  *Id*.  The Fourth Department similarly found that petitioner's claim that he was improperly subject to an enhanced sentence was not preserved for its review.  *Id*.  The Appellate Division's finding that these two claims were not preserved means that they found the claims procedurally defaulted when petitioner failed to object or to otherwise raise the claims in Onondaga County

Court.

New York's statutory preservation rule is codified at N.Y. CRIM. PROC. LAW Section 470.05(2).  Generally, the party claiming error must advise the court of the error so that the court has an opportunity to correct the error.  *See, generally,* N.Y. CRIM. PROC. LAW Section 470.05(2).  With respect to the involuntary plea claim, the requirement that the claim be preserved in the court conducting the plea allocution is not only statutory, but also based on New York case law.

> In New York, claims about the voluntariness of a guilty plea must be presented to the state court in one of three ways: a motion to withdraw the plea before sentencing, a post-judgment New York Criminal Procedure Law ("C.P.L.") § 440.10 motion in the trial court, or on direct appeal if the record permits.

McCormick v. Hunt, 461 F. Supp. 2d 104, 109 (W.D.N.Y. 2006) (citing N.Y. CRIM. PROC. LAW § 220.60(3); *People v. Lopez*, 71 N.Y.2d 662, 665-66, 525 N.E.2d 5 (1988)).

In *Garvey v. Duncan*, the Second Circuit found that New York's statutory requirement that a question of law be "preserved" for appeal is an independent and adequate state law ground for the Appellate Division to affirm a conviction.  *Garvey v. Duncan*, 485 F.3d 709, 720 (2d Cir. 2007).  "The Second Circuit Court of Appeals has 'observed and deferred' to New York's contemporaneous objection rules as a bar to federal habeas review."  *Brown v. Rivera*, Civ. No. 9:05-CV-1478 (RFT), 2008 U.S. Dist. LEXIS 48353, *6-7 (N.D.N.Y. June 23, 2008) (citing *Garcia v. Lewis*, 188

F.3d 71, 79 (2d Cir. 1999); *Bossett*, 41 F.3d at 829 n. 2; *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)).  Furthermore, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."  *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).

In this case, it is clear that petitioner did not, in any way, raise either his involuntary plea claim or his claim that he was improperly subject to an enhanced sentence in Onondaga County Court.  Both claims were ***raised for the first time*** in the Appellate Division, and the Appellate Division did not consider them because both claims were procedurally defaulted.  As stated above, a state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim ***only*** if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can establish that failure of the court to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 748-50.

Petitioner does not acknowledge the procedural default of his involuntary plea claim except to say that the claim "is not procedurally barred."  (Dkt. No. 19, 5).  In his petition (Petition, ¶ 12 (B)), and in a section of his traverse related to another claim (Dkt. No. 19, 6), petitioner argues that his counsel was ineffective at least in

part because counsel did not attempt to withdraw the plea.  With respect to his

enhanced sentence claim, petitioner argues that the Court of Appeals was the last

court to reject the claim, not the Appellate Division.  (Dkt. No. 19, 11-12).  Petitioner

also argues that the Appellate Division did not "explicitly" reject his enhanced

sentence claim pursuant to N.Y. CRIM. PROC. LAW Section 470.05(2).  *Id*. at 12.

Petitioner makes no argument as to why this issue was not raised in Onondaga

County Court.

This court finds petitioner's arguments unavailing with respect to both of these

claims.  Petitioner simply did not give the Onondaga County Court an opportunity to

correct either of these alleged errors, and the Appellate Division properly found the

claims procedurally defaulted because they were not preserved.  Here, petitioner has

not offered any basis as a cause for the default, and this court need not, therefore,

reach the issue of prejudice.  Because petitioner pleaded guilty, it would be difficult

to find that he was "actually innocent," and as discussed above, petitioner has been

unable to present any "new and reliable" evidence that he is innocent.

Under *Tollett v. Henderson*, a petitioner "may only attack the voluntary and

intelligent character of the guilty plea by showing that the advice he received from

counsel was not within the standards set forth in *McMann*."  *Tollett v. Henderson*,

411 U.S. 258, 267 (1973) (citing *McMann v. Richardson*, 397 U.S. 759 (1970)).  To

the extent that petitioner's papers are construed as ***making the new, separate, claim***

that the cause of the default for his involuntary plea was the ineffective assistance of his counsel, specifically by failing to move to withdraw the guilty plea, it is the first time that petitioner makes that claim *in any court*.[9]  Petitioner, therefore, has not exhausted the claim.  A claim is *deemed* exhausted, however, when no real avenue remains by which it could be raised.  *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)(*citing Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied* 514 U.S. 1054 (1995).

In this case, petitioner has already pursued both a direct appeal and a motion to vacate.  Petitioner's motion to vacate included a claim that he was denied the effective assistance of counsel, but only on the ground that counsel advised petitioner improperly and failed to object to the "ambiguous" plea deal.  *See, generally* Dkt. No. 19.  Petitioner is now barred from raising the claim that his counsel was ineffective for failing to withdraw the plea because he unjustifiably failed to raise the issue on direct appeal, and has made a previous Section 440 motion where he was in a position to raise the claim but did not.  N.Y. CRIM. PROC. LAW §§ 440.10(2)(c) and (3)(c).  Since no remaining avenue exists by which this petitioner could raise this additional claim about his counsel or the cause for the default of his involuntary plea claim, it is deemed exhausted but procedurally defaulted.  *Aparicio*,

---

[9]In the state courts, as well as his petition to this court, petitioner argued only that his plea was involuntary because of the court's actions–not because of any failure in representation by his attorney.  *See* SCR, Ex. A and Dkt. No. 1.

269 F.3d at 90; *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.2d 162, 170 (2d Cir. 2000).

Petitioner must show cause and prejudice or "actual innocence" to overcome this procedural bar to this claim.  Petitioner makes no argument in this regard, and as explained above, has not submitted any "new and reliable" evidence to show his actual innocence.  The Appellate Division's decision that petitioner's involuntary plea claim and his claim that he was improperly subject to an enhanced sentence were procedurally barred from its consideration was based on an independent and adequate state law basis.  The claims, therefore, may not be considered by this court and may be dismissed. Additionally, petitioner's claim that his counsel was ineffective for failing to move to withdraw his guilty plea is barred by procedural default.

**4.    Harsh and Excessive Sentence**

Within his claim that he was improperly subject to an enhanced sentence (Claim 4), petitioner argues that his sentence of fifteen years to lifetime incarceration is harsh and excessive "in regard to the underlying offense."  (Petition, ¶ 12 (E)). Petitioner raised this claim in his direct appeal.  The Appellate Division found that this contention did not survive petitioner's waiver of the right to appeal.  *People v. Moore*, 6 A.D.3d at 1077.

The Eighth Amendment forbids only *extreme* sentences which are "grossly

disproportionate" to the crime of conviction. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003). The Second Circuit has consistently held that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). *See also*, *Ewing v. California*, 538 U.S. 11, 25 (2003); *Mendoza v. Miller*, 9:04-CV-1270 (LEK), 2008 U.S. Dist. LEXIS 60176, *12-13 (N.D.N.Y. Aug. 6, 2008).

In this case, petitioner pleaded guilty to aggravated criminal contempt, a Class D felony. N.Y. PENAL LAW § 215.52. Under N.Y. PENAL LAW § 70.00, the maximum term of incarceration for a Class D felony is seven years. N.Y. PENAL LAW § 70.00(2)(d). Under the persistent felony offender statute, a defendant may be sentenced as though he had committed a Class A-I felony. N.Y. PENAL LAW § 70.10(2). Under N.Y. PENAL LAW § 70.00, the maximum term of incarceration for a Class A-I felon is life imprisonment. N.Y. PENAL LAW § 70.00(2)(a). The minimum term of incarceration for Class A-I felonies is "not . . .less than fifteen years nor more than twenty-five years . . ." N.Y. PENAL LAW § 70.00(3)(a)(i).

Petitioner was originally offered a sentence of two to four years, well below the maximum sentence of seven years for a Class D felony. Unfortunately, petitioner violated the conditions of his release, and Judge Walsh conducted a hearing to determine whether petitioner was a persistent felon. Petitioner admitted in Onondaga County Court that, over the course of his lifetime, he had been incarcerated on at

least three separate occasions for at least four different felony convictions.  (S. 2-5).

Judge Walsh, therefore properly determined that petitioner was a persistent felon

under the statute.  N.Y. PENAL LAW § 70.10.  Petitioner received the ***minimum***

***sentence for which he was eligible*** as a persistent felon.  The sentence which

petitioner is now serving is at the low end of the sentencing range prescribed by New

York Penal Law.  Therefore, petitioner's claim that his sentence is harsh and

excessive is not cognizable in this court.  The claim may be dismissed.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the petition be DENIED and DISMISSED; it is

further

RECOMMENDED, that no certificate of appealability issue.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten

days within which to file written objections to the foregoing report.  Such objections

shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of*

*Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Date: February 19, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge